UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ANGELICA HERNANDEZ,

                Plaintiff,

-against-

FRIDA TORRESBLANCO and MARC WEISS,

                Defendants.

-------------------------------------------------------------x

**JUDGE BUCHWALD**

**08 CV 0999**

Docket No.

**COMPLAINT**
**AND JURY DEMAND**



JAN 31 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## PRELIMINARY STATEMENT

1.     This action seeks redress for serious violations of the federal Fair Labor Standards Act (FLSA), the New York Labor Law, federal and state law prohibiting discrimination based on race and ethnicity as guaranteed by 42 U.S.C. § 1981, tort law, and contract law. Defendants Frida Torresblanco ("Ms. Torresblanco") and Marc Weiss ("Mr. Weiss") (collectively, "Defendants") hired Angelica Hernandez ("Ms. Hernandez" or "Plaintiff"), a non-white Latina, as a housekeeper and nanny and then failed to pay her the minimum wage, failed to pay her overtime compensation, failed to pay her an additional hour of "spread of hours" pay at minimum wage for every day in which she worked more than ten hours, and at times failed to pay her at all. In addition, Defendants intentionally discriminated against Plaintiff on the basis of race and ethnicity by insulting her, paying her less than white workers doing the same childcare work, and providing less favorable work conditions than those provided to the white workers. Finally, Ms. Torresblanco physically attacked Plaintiff on her final day of work.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1343(4) because these claims seek redress for violations of the Plaintiff's federal constitutional, civil and statutory rights, and arise under acts of Congress regulating commerce.

3. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's federal claims that they form parts of the same case or controversy under Article III of the United States Constitution.

4. Pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), Plaintiff has consented in writing to becoming party to this lawsuit. Plaintiff's written consent to bring this action is attached hereto and is incorporated by reference.

5. Venue is vested in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as events giving rise to the claims occurred in this district and Defendants reside in this district.

6. The Plaintiff demands a trial by jury on each and every claim as pled herein.

## PARTIES

7. Plaintiff Angelica Hernandez was employed by Defendants as a nanny and housekeeper and worked primarily in their home, located at 82 Franklin Street, Apt. 3, New York, New York 10013, from February, 2007, to September, 2007.

8. At all times relevant to this action, Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 190(2), 651(5) and the Fair Labor Standards Act, 29 U.S.C. § 203(e).

9. Defendants Frida Torresblanco and Marc Weiss are a married couple with a child who was approximately three months old when Ms. Hernandez began her employment.

10. At all times relevant to this action, Defendants were Plaintiff's employers, as Defendants hired, supervised, controlled, and paid her.

## FACTUAL ALLEGATIONS

11. Ms. Hernandez accepted an offer of employment and began working for Defendants as a housekeeper and nanny in or around the beginning of February, 2007.

12. Defendants employed other household staff and Plaintiff's duties changed over time depending on the jobs of other employees.

### *Duties and Hours*

13. During the first weeks of February, 2007, and again from mid-March to mid-June, 2007, Plaintiff worked cleaning Defendants' apartment approximately three or four days each week. She started each morning around 9 a.m. and worked until around 5 p.m., although she was occasionally required to work until 7 p.m. when Ms. Torresblanco was either leaving for or returning from a trip.

14. In addition, during the weeks between mid-March and mid-June, when Plaintiff worked cleaning Defendants' apartment, Plaintiff also filled-in as a nanny when Defendants' other employee had a day off. Plaintiff would start her duties as a nanny on Monday morning around 9 a.m. and work through the night caring for Defendants' infant until around 4 p.m. on Tuesday, staying overnight in Defendants' home. Plaintiff also cooked for the family and performed some cleaning duties even while working as a nanny. During this period, Plaintiff usually worked well over 40 hours each week. Plaintiff slept in the infant's room, and she was required to feed him a number of times each night when he woke up. Plaintiff usually was

3

required to spend about an hour with the infant each time he woke up in the middle of the night. Defendants' infant did not sleep through the night and Plaintiff was required to feed him every three hours. Therefore, she was unable to sleep more than three hours at a time.

15. For a few weeks in late February and early March, 2007, and again from mid-June through the date of her termination in September, 2007, Plaintiff worked primarily as Defendants' nanny. She also did Defendants' laundry each Saturday, shopped for groceries for Defendants, cooked for Defendants each day, and cleaned Defendants' home. Plaintiff worked constantly seven days a week during these periods, caring for Defendants' infant at all hours of the day and night except for occasional breaks when Defendants took the infant for short periods of time and an occasional free period of time on some weekend days. Usually, however, even when Defendants took the infant for short periods, Plaintiff was required to do laundry, run errands for the family, or perform other tasks for Defendants.

16. During the period between mid-June and mid-September, frequently, Plaintiff was unable to sleep five hours in a row each night because she was required to feed the infant at night when he woke up. During this period, Plaintiff usually worked approximately 150 hours each week.

17. Plaintiff's cleaning duties during the entire time of her employment included dusting, mopping, vacuuming, sweeping, doing laundry, buying food, ironing, making beds, cleaning bathrooms, and taking out trash and recycling. Plaintiff's childcare duties when she worked primarily as Defendant's nanny included feeding, clothing, bathing, and caring for the infant at all times. Plaintiff's cooking duties when she worked primarily as Defendants' nanny included making meals for Defendants, the infant, and herself each day. Some of Plaintiff's additional tasks included taking out and picking up Defendants' dry cleaning, waiting for

4

deliveries, and waiting for packages to be picked up. Plaintiff often was required to clean and do other tasks while watching the infant at the same time.

18. On two occasions, Defendants left their home for a trip, and required Plaintiff to stay in their home. She received packages for them and cleaned while they were gone.

19. Plaintiff received packages, or answered the door for messengers to pick up packages, for Defendants on an almost daily basis. Upon information and belief, many of these packages related to Defendants' businesses.

20. Defendants also required Plaintiff to clean another apartment for them. Upon information and belief, Defendants maintained this apartment for their out-of-town guests. Plaintiff cleaned this apartment thoroughly twice and returned a third time to make beds and tidy the apartment.

### *Wages*

21. Ms. Torresblanco initially promised Plaintiff $240 for each week she worked as a housekeeper. Later, Ms. Torresblanco promised additional pay for Plaintiff's work as a fill-in nanny. In mid-June, Ms. Torresblanco then promised Plaintiff $3,000 a month while working as a full-time nanny.

22. Defendants did not pay Ms. Hernandez on a regular basis as required by N.Y. Labor Law § 191. Instead, Defendants paid Plaintiff $240 on or about February 21, plus $15 reimbursement for purchases she made for the family, $1,420 on or about March 19, plus $480 reimbursement for purchases she made for the family, $1,445 on or about April 19, which included substantial reimbursement for purchases she made for Defendants' benefit, $2,766 on or about June 26, which also included reimbursement for purchases she made for Defendants' benefit, $3,000 on August 9, and $3,000 on or about August 14.

5

23. Throughout most of her employment with Defendants, Plaintiff's wage was below the federal minimum wage rate, which was $5.15 per hour until July 25, 2007 and $5.85 thereafter, and the state minimum wage, which was $7.15 per hour at all relevant times.

24. Throughout most of her employment with Defendants, Plaintiff worked well over 44 hours per week and she received no additional compensation for overtime hours. In addition, Plaintiff did not receive an additional hour of pay for those days in which the interval between the time she started and ended work was more than ten hours.

25. Throughout most of her employment with Defendants, Plaintiff was required to shop for groceries for Defendants and make other purchases for Defendants' benefit. Defendants generally would reimburse her for these purchases, but often did not do so in the same week when the purchases were made, further reducing Plaintiff's wages. Further, Defendants did not reimburse Plaintiff for approximately $500 worth of purchases she made for their benefit from on or about the middle of August to the middle of September.

26. Because Ms. Torresblanco did not pay Plaintiff on a regular basis, Plaintiff occasionally asked Ms. Torresblanco about her wages. However, Ms. Torresblanco continued to pay her infrequently.

***Discrimination***

27. Defendants employed two white nannies during the period in which Plaintiff worked for them. These other nannies are white-skinned with blonde hair and light eyes, while Plaintiff is dark-skinned, with dark hair and dark eyes. Defendants treated Plaintiff differently from these other nannies in numerous respects.

28. Upon information and belief, Defendants paid both the white nannies more than Plaintiff.

29. Upon information and belief, Defendants allowed the white nannies more break and rest time than Plaintiff. Furthermore, the white nannies were not required to clean and cook in addition to their childcare duties, as Plaintiff was. The white nannies were also allowed more freedom to leave the apartment with Defendants' infant when they wanted, while Plaintiff was required to have explicit permission from Defendants before ever leaving the apartment, even for a short time, with the infant.

### *Plaintiff's Termination*

30. In or around early September, 2007, Plaintiff asked Defendants' permission to attend a nanny course organized by Domestic Workers United ("DWU") in which she would obtain a certification as a nanny. On September 14, during a day that Defendants had given to her as time-off, Plaintiff attended an inscription meeting for DWU, as a pre-requisite for attending the course. She returned to Defendants' home later than expected. Ms. Torresblanco interrogated Plaintiff about why she was late and demanded to see the materials Plaintiff had received at the meeting. Plaintiff at first refused, but eventually showed Ms. Torresblanco a "Know Your Rights" manual she had been given at the DWU meeting. Ms. Torresblanco told her that the information she had was "stupid," and that Plaintiff did not have those rights.

31. On the morning of September 18, Ms. Torresblanco confronted Plaintiff about not taking the infant to the park. Plaintiff responded that she was waiting for Ms. Torresblanco to go with her to the park because she thought that was their agreement. Ms. Torresblanco became irate and began to shout and scream at Plaintiff. Plaintiff asked Ms. Torresblanco not to speak to her that way. Ms. Torresblanco continued to insult Plaintiff and physically pushed her. Ms. Torresblanco insisted that Plaintiff return her keys to their apartment. Plaintiff understood that she was being fired, that she was being told to leave the premises, and asked to collect her

belongings. Ms. Torresblanco pulled Plaintiff's hair, slapped her in the face, and hit her arm with a closed fist. Plaintiff asked her to stop hitting her and promised to give Ms. Torresblanco the keys. Ms. Torresblanco took Plaintiff's belongings and threw them on the ground, shouting and stomping on Plaintiff's things. Ms. Torresblanco threatened to call law enforcement. She told Plaintiff that she was born to be a servant, not a nanny. She told Plaintiff to tell DWU that they were wrong and that Plaintiff had no rights.

32. Mr. Weiss witnessed part of this incident, and at one point asked Ms. Torresblanco not to hit the Plaintiff.

33. After leaving Defendants' apartment, Plaintiff called the police. Two officers from the First Precinct responded and spoke with Plaintiff. Plaintiff described what had happened and told the officers that she had not been paid her last month of wages. The officers then went to Defendants' apartment. When they returned, they told Plaintiff that Defendants had agreed to send her wages in the mail.

34. Plaintiff never received her wages in the mail. Defendants' failure to pay Plaintiff any wages, failure to pay the minimum wage and overtime pay consistent with the Fair Labor Standards Act or the New York State Labor Law throughout Plaintiff's employment, and failure to reimburse Plaintiff for purchases she made for the benefit of Defendants' family, was willful and in bad faith.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### FAIR LABOR STANDARDS ACT (FLSA) MINIMUM WAGE

35. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

36. Because she was employed as a domestic worker in a household at all times relevant to this action, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

37. Section 6(a) of the FLSA, as amended by the Fair Minimum Wage Act of 2007, 29 U.S.C. § 206(a), provides that any employee engaged in commerce shall be paid wages at a rate not less than $5.15 per hour prior to July 25, 2007 and $5.85 per hour thereafter.

38. Defendants knowingly did not pay Ms. Hernandez the federally mandated minimum wage from approximately February 2007 through approximately the middle of March 2007, and again from the middle of June 2007 through approximately the middle of September 2007 in violation of 29 U.S.C. § 206(f) and accompanying United States Department of Labor regulations.

39. Defendants required Plaintiff to purchase food for the Defendants' benefit, further reducing her wages below the applicable minimum in violation of 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35.

40. Defendants' failure to pay Plaintiff the minimum wage was willful within the meaning of 29 U.S.C. § 255(a).

41. Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount to be determined at trial and to an equal amount in liquidated damages, as well as interest, reasonable attorneys' fees and the costs of this action.

## SECOND CLAIM FOR RELIEF: FAIR LABOR STANDARDS ACT OVERTIME

42. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

43. Because she was employed as a domestic worker in a household at all times relevant to this action, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

44. Defendants willfully failed to compensate Plaintiff the extra wages due for hours worked in excess of forty hours per workweek, in violation of 29 U.S.C. § 207(a)(1).

45. Plaintiff is entitled to an award of damages for unpaid overtime wages in an amount to be determined at trial and to an equal amount in liquidated damages, as well as interest, reasonable attorneys' fees and the costs of this action.

### THIRD CLAIM FOR RELIEF: NEW YORK STATE MINIMUM WAGES

46. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

47. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

48. At all times relevant to this action, Defendants were employers within the meaning of the New York Labor Law.

49. Defendants willfully failed to compensate Plaintiff the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law § 652.

50. Pursuant to New York Labor Law § 663, an employer who willfully fails to pay wages and overtime required by the Minimum Wage Act shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found to be due him.

51. Plaintiff is entitled to an award in the amount of minimum wages that Defendants willfully failed to pay, plus liquidated damages, in an amount to be determined at trial, pursuant to New York Labor Law §§ 652(1), and 663, as well as interest, reasonable attorneys' fees and the costs of this action.

### FOURTH CLAIM FOR RELIEF: NEW YORK STATE OVERTIME

52. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

53. Defendants willfully failed to compensate Plaintiff for hours worked in excess of forty-four per workweek as required by New York Labor Law § 652 and accompanying regulations, including but not limited to 12 N.Y.C.R.R. § 142-2.2.

54. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover her unpaid overtime wages and an amount equal to one quarter of her unpaid overtime wages in the form of liquidated damages, interest, and the reasonable attorneys' fees and costs of the action.

### FIFTH CLAIM FOR RELIEF: NEW YORK STATE SPREAD OF HOURS

55. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

56. Defendants willfully failed to pay Plaintiff an extra hour's pay at minimum wage for every day that Plaintiff worked in excess of ten hours, in violation of New York Labor Law §§ 190, *et seq.*, 650, *et seq.*, and 12 N.Y.C.R.R. § 142-2.4.

57. Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess of ten hours, plus liquidated damages, as well as interest, reasonable attorneys'

fees and the costs of this action, in an amount to be determined at trial, pursuant to New York Labor Law §§ 190, *et seq.*, 198, 650, *et seq.*, and 12 N.Y.C.R.R. § 142-2.4.

### SIXTH CLAIM FOR RELIEF: NEW YORK LABOR LAW - UNPAID WAGES

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

59. Plaintiff is entitled to unpaid wages for work performed in August and September, 2007, which Defendants willfully failed to pay, plus liquidated damages, as well as interest, reasonable attorneys' fees and the costs of this action, in an amount to be determined at trial, pursuant to New York Labor Law §§ 190, *et seq.* and 198.

### SEVENTH CLAIM FOR RELIEF: ASSAULT

60. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

61. Defendant Torresblanco assaulted Plaintiff, intentionally placing her in fear of imminent harmful or wrongful physical contact.

62. As a result of the foregoing, Plaintiff has suffered and will suffer emotional pain.

63. Accordingly, she is entitled to compensatory damages in an amount to be determinated at trial and punitive damages in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF: BATTERY

64. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

65. Defendant Torresblanco intentionally caused harmful contact with Plaintiff by

pulling her hair, slapping her in the face, and hitting her arm with a closed fist without Plaintiff's consent.

66.    As a result of the foregoing, Plaintiff has suffered and will suffer physical and emotional pain.

67.    Accordingly, she is entitled to compensatory damages in an amount to be determinated at trial and punitive damages in an amount to be determined at trial.

### NINTH CLAIM FOR RELIEF
### NEW YORK LABOR LAW - TIMELY PAYMENT

68.    Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

69.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of N.Y. Lab. Law §§ 2(5), 190(2), and 651(5).

70.    At all times relevant to this action, Defendants were Plaintiff's employer within the meaning of N.Y. Lab. Law §§ 2(6), 190(3) and 651(6).

71.    At all times relevant to this action, Defendants employed Plaintiff as a manual worker as defined by N.Y. Lab. Law §§ 2(7) and 190(4).

72.    By failing to pay Plaintiff all owed wages on a weekly basis, Defendants willfully disregarded their obligations to pay wages in a timely manner and no more than seven (7) calendar days after the week in which the wages were earned.

73.    Defendants' knowing and deliberate actions constitute a direct violation of N.Y. Lab. Law § 191(1)(a).

74.    As a result of the foregoing, Plaintiff has been injured, and Defendants have profited thereby, in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

75. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

76. Defendants have been enriched by the value of Plaintiff's purchases of food for Defendants' family.

77. The enrichment was at Plaintiff's expense because Plaintiff had to pay for these items and that were required by Defendants and for Defendants' benefit.

78. The circumstances are such that equity and good conscience requires Defendants to pay Plaintiff for all the purchases made at Defendants' direction and the expenses incurred in the course of her employment for Defendants.

## ELEVENTH CLAIM FOR RELIEF
## 42 U.S.C. § 1981 – DISCRIMINATION BASED ON RACE AND ETHNICITY

79. Plaintiff alleges and incorporates by reference all allegations in all preceding paragraphs.

80. The conduct and actions of Defendants in subjecting the Plaintiff, a non-white Latina, to discrimination in the terms and conditions of her employment, were motivated by animus because of the Plaintiff's ethnicity and race; were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of Defendants' actions; were done without lawful justification; and were designed to and did cause specific and serious compensatory injury, pain and suffering in violation of the Plaintiff's constitutional rights as guaranteed by 42 U.S.C. § 1981.

81. As a result of the wrongful conduct of Defendants, Plaintiff has been injured in the following ways, among others:

14

    a. loss of wages and benefits paid to white nannies; and

    b. psychological and emotional injury, including humiliation, mental anguish, embarrassment, degradation, indignity, and disgrace, pain and suffering, past and future, as a result of the wrongful acts of Defendants as set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

1. Awarding unpaid wages, including minimum wage, plus liquidated damages and/or interest thereon, pursuant to 29 U.S.C. §§ 206, 216(b); New York Labor Law §§ 190, *et seq*, 198, 652(1), 663; and 12 N.Y.C.R.R. §§ 142-2.1, 142-2.4;

2. Awarding overtime pay and spread-of-hours pay, plus liquidated damages and/or interest thereon, pursuant to 29 U.S.C. §§ 207, 216(b); New York Labor Law §§ 190, *et seq*, 198, 652(1), 650, 663; and 12 N.Y.C.R.R. §§ 142-2.2, 142-2.4;

3. Ordering such equitable and injunctive relief as necessary to restore Plaintiff to the terms, conditions, and privileges of employment she enjoyed prior to Defendants' discriminatory and retaliatory acts, to compensate Plaintiff for all monetary and/or economic damages; specifically, the difference between what Plaintiff was paid and what the white nannies were paid, plus prejudgment interest;

4. Awarding Plaintiff punitive damages, in an amount to be determined at trial;

5. Awarding Plaintiff compensatory damages for emotional distress;

6. Awarding pre-judgment interest;

7. Awarding reasonable attorney's fees, costs, and expenses;

8. Award Plaintiff all actual, incidental, consequential, and punitive damages arising

from Defendants' unjust enrichment and tortious conduct;

9. Awarding such other and further relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
January 31, 2008

By: *Molly K. Biklen*

MOLLY BIKLEN (MB 3491)
Urban Justice Center
123 William Street, 16th Fl.
New York, NY 10038
Tel: 646-459-3008
Fax: 212-533-4598

STEVEN BANKS (SB 0987)
Attorney-in-Chief
ADRIENE L. HOLDER (AH 1872)
Attorney-in-Charge, Civil Practice
CHRISTOPHER D. LAMB (CL 8145)
Attorney-in-Charge, Staten Island Neighborhood Office
HOLLIS V. PFITSCH, of counsel (HP 0522)
The Legal Aid Society
Employment Law Project
199 Water Street, 3rd Floor
New York, New York 10038
Tel: 212-577-3465
Fax: 212-509-8761


**SECTION 216(b) FAIR LABOR STANDARDS ACT AUTHORIZATION**

I, Angelica Hernandez, hereby consent to be a plaintiff in a lawsuit pursuant to Section 216(b) of the Federal Fair Labor Standards Act.

Dated: New York, New York
January 22, 2008

_____
Angelica Hernandez

Sworn to before me this 22nd day of
January, 2008

_____
NOTARY PUBLIC

HOLLIS V. PFITSCH
Notary Public, State of New York
No. 02PF6158836
Qualified in Kings County
Commission Expires May 07, 2011

**DECLARATION OF TRANSLATION**

I, Molly Biklen, declare under penalty of perjury that I am fluent in both Spanish and English and that I have correctly and accurately translated the complaint and this document from English to Spanish, and that the plaintiff, Angelica Hernandez, has assured me that she understands these documents.

Dated: New York, New York
January 22, 2008

_____
Molly Biklen